**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL LUCIDO,<br><br>        **Plaintiff**,<br><br> -against-<br><br>U.S. LEGAL SUPPORT, INC. and<br>CHARLES SCHUGART,<br><br>        **Defendants.** | Case No.: 23-cv-01389 (DEH)<br>(RWL)<br><br><br>**AMENDED VERIFIED**<br>**COMPLAINT** |

   Plaintiff, Paul Lucido, by his attorneys, Rosenberg Fortuna & Laitman, LLP, as and for his Amended Verified Complaint, respectfully alleges the following upon information and belief:

   1. Plaintiff Paul Lucido ("**Lucido**" or "**Plaintiff**"), is an individual resident of the State of Florida.

   2. Upon information and belief, Defendant U. S. Legal Support, Inc. ("**US Legal**") is a Texas corporation.

   3. According to US Legal's own website, US Legal provides a full suite of court reporting solutions, record retrieval, interpreting & translations, trial services and transcription services to law firms, major corporations and insurance companies nationwide. US Legal sells its services to lawyers and law firms through salespeople that it employs.

   4. Upon information and belief, at all relevant times, US Legal has had and continues to have substantial contacts with the County of New York, State of New York, and maintains offices and operates business in the County of New York, State of New York.

   5. Upon information and belief, Charles Schugart ("**Schugart**") is an individual

residing in Houston, Texas.

6. At all relevant times, Schugart was the Chief Executive Officer of US Legal.

7. Upon information and belief, at all relevant times, Schugart has had and continues to have substantial contacts with the County of New York, State of New York. Among other contacts, Schugart regularly visits New York to meet with US Legal's New York sales team, managers, and investors.

## UNDERPAYMENT OF COMMISSIONS

8. In approximately 2009, US Legal hired Lucido to serve as an Account Executive. US Legal agreed to pay Lucido a base salary, as well as a commission on revenue generated, to be established by a yearly plan.

9. Commencing on or before 2012 and continuing through the balance of Lucido's employment with US Legal in April 2021, Lucido and US Legal agreed that Lucido was to be paid commissions (over and above any salary) by US Legal in the amount of 10% of all commissionable revenue generated by Lucido's sales efforts (hereafter, the "**Commission Agreement**").

10. Beginning, upon information and belief, no later than 2016, and continuing until Lucido's termination of employment with US Legal in April 2021, US Legal, contrary to the Commission Agreement, unilaterally, adversely and unlawfully underpaid Lucido's earned commissions in a number of ways.

11. For example, in or about early 2018, Lucido first became aware of a fraudulent practice by which US Legal managers and executives, including Amy Williamson ("Williamson") and Carrie Cosenza ("Cosenza"), would "game" the commission tracking software used by US Legal to underpay commissions owed to salespeople and to divert sales to certain friends or favored co-

workers.

12. By way of background, sales at US Legal were tracked by software called HubSpot. HubSpot is a "CRM" software, or "client relationship management" software, like a client/sales database. US Legal utilized identifier, knows as 'tags', within Hubspot in order to assign credit for sales within HubSpot for the purpose of assigning commissions to the appropriate salesperson.

13. Lucido became aware that Williamson would 'tag' sales that had been initiated, brought in, and closed solely by Lucido, as being referable to certain salespeople who were friends with Williamson, many of earned lower commissions than Lucido, thus allowing US Legal to unjustly keep more of the money owed to Lucido.

14. There was no basis under the law or under company policy for re-tagging the sales in such a way; it was done intentionally to improperly divert earned commissions away from Lucido.

15. Further, Lucido discovered that there was a false employee 'tag' in HubSpot. Each salesperson had a 'tag' associated with their name, and Lucido discovered a 'tag' for "Jana Holton." There was no employee named Jana Holton. Lucido used his access to the HubSpot system to discover that the tag "Jana Holton" (similar to the name of Executive Vice President Shana Holton) was essentially a 'phantom' tag that was used by Holton and Williamson to tag the lawfully earned commissions of salespeople in order to fraudulently keep the commissions dormant, particularly those of Lucido, before re-assigning them to other people. Lucido estimates he has had at least $50,000 in commissionable revenue unlawfully assigned to other salespersons this way.

16. In approximately the beginning of 2019, Lucido became aware of yet another fraudulent commission practice being undertaken by executives and management: using fraudulent

job-type entries to fool the software used to calculate commissions into believing certain sales were not "commissionable revenue" when they in fact were. In effect, US Legal was "shaving" down Lucido's commissions.

17.     By way of further background, once sales were "tagged" and assigned to a particular salesperson in HubSpot, US Legal used software called "Reporter Base" to actually calculate the commissions based on those sales from the invoices that were paid. "Reporter Base" was programmed to recognize all task entries that represented commissionable revenue. For example, court reporter services, expedite fees, interpreter fees, and videography services and the like were all commissionable revenue, but things like taxes and shipping and handling were not. Lucido had access to the "Reporter Base" software until his access was stripped by US Legal in mid-2019 (discussed below).

18.     In approximately early 2019, Lucido was contacted by a client who asked him a question about an invoice. When Lucido received the invoice, he was confused because the invoice did not match up with his recollection of the size of the sale and the commission he had earned on it. Lucido looked at his commission report and then looked up the invoice in the system. He discovered that management and/or executives had creatively edited entries, adding symbols and punctuation (like changing "3 Day Expedite" to "3-Day-Expedite") which the system would no longer recognize as commissionable revenue even though the policies of US Legal at that time were to pay commission on such revenue. Lucido became suspicious and began to monitor his commissions in "Reporter Base," and would regularly discover that management and/or executives had regularly "shaved down" his commissionable revenue (and therefore his commissions), sometimes by as much as 50%. Lucido also became aware that the digital "audit-trails" (the data that showed who had made a particular change to a particular account in "Reporter Base") were being

deleted by a high-level user, essentially discovering that someone was covering up this fraud.

19.   At all relevant times, the managers and executives that were underpaying, "shaving down", and reassigning these commissions were incentivized to do so, as they were paid bonuses on overall profit and not total sales.

20.   During or about the first few months of 2019, Lucido decided to report these ways that the commission system within US Legal was being manipulated to underpay his commissions and, upon information and belief, the commissions of others. He reported the fraudulent manipulation of commissions, as described above, and gave detailed information about how he knew what was happening within the software. He reported his concerns to Shana Holton and to US Legal's Human Resources department.

21.   In or around mid-2019, shortly after Lucido reported these issues of commission fraud, including reporting the cover-up, he was summoned to a meeting with executives and management and stripped of his ability to log in to and see the changes in "Reporter Base." Instead of fixing the problem, US Legal tried to prevent Lucido from having visibility into how his commissions were paid and if they were being manipulated. No other meaningful action was taken in response to his complaints, no investigation was conducted, and the problem was not fixed.

22.   In approximately October of 2020, Lucido could no longer tolerate being underpaid (or not paid) on his lawfully earned commissions. He felt cheated by US Legal and he again complained to several people in management and Human Resources about these unlawful practices. Lucido again complained to his direct manager Carrie Cosenza, to Executive Vice President Shana Holton, and to Human Resources Representative Jessica Frost. Lucido complained in detail about all the ways the company was cheating, breaking the law, committing fraud, and shorting his commissions described above. He was told by Holton "You make enough money, you

can take it or leave it." No meaningful investigation was conducted, and no meaningful action was taken to correct what had been done.

23. Beginning on or about January 2021, US Legal unilaterally decided to stop paying Lucido earned commissions on two "National Accounts." During his time as Director of Business Development, Lucido had closed two deals with insurance companies that purchased ongoing services from US Legal. US Legal had agreed to pay, and had paid for years, a 3% commission on all services purchased by those two companies nationwide from US Legal, and a 10% commission on all sales within Lucido's region (the Northeast US). Beginning January 1, 2021, US Legal stopped all commissions payments based on sales to those two national insurance companies. Lucido estimates that these sales represented approximately $4,500 in owed commissions every month between January 1, 2021 and Lucido's separation in April of 2021, or $13,500 in commissions from just these two companies. There was no basis in the agreement between Lucido and US Legal for stopping payment on these commissions, it was done so that US Legal could pay Lucido less money and keep more of his wages.

24. There may be additional methods by which US Legal underpaid Lucido's commissions, and Lucido reserves the right to supplement his legal claims asserted herein upon further discovery.

**THE BUYOUT AGREEMENT REGARDING LUCIDO'S EQUITY**

25. As of 2018, Lucido had earned equity in US Legal as part of his compensation package at various times and was a stockholder in US Legal.

26. In approximately November of 2018, US Legal was engaged in trying to sell its company to a private equity firm (the "**Transaction**"). As part of the Transaction, every US Legal employee stockholder was expected to have the option to sell their US Legal stock. At that time,

Lucido planned to liquidate his US Legal stock in connection with the Transaction. During approximately late November, 2018, US Legal CFO Kellen Schugart, daughter of CEO Charles Schugart, informed Lucido that he was required to exchange (a/k/a 'roll over') approximately 26% of his US Legal stock into ownership of an entity affiliated with the acquiring company in connection with the Transaction, and that he would not be permitted to liquidate his own stock. Lucido objected, but Kellen Schugart and Charles Schugart let him know he had to participate in the Transaction, and Lucido signed the paperwork he was presented.

27. The Transaction closed at the end of November 2018. Lucido received a cash payout for approximately 74% of his stock in US Legal, and the remaining 26% of the stock was exchanged (a/k/a 'rolled over') into 1,798,827 Series A-1 Units in U.S. Legal Support Investment Holdings, LLC (the "**Membership Units**")

28. In approximately January of 2019, Lucido and Schugart ("**Schugart**"), along with executives and salespeople, attended a multi-day US Legal seminar in Arizona. During the seminar, Lucido and Schugart met privately to discuss Lucido being having been prevented by US Legal from selling those shares of US Legal that were rolled into Membership Units. Specifically, Lucido told Schugart that he had been uncomfortable with the forced equity exchange (*i.e.* the rollover), that he wanted to sell the Membership Units, and if Lucido was not allowed to, that he would leave US Legal. During this time, Lucido was a top salesperson for US Legal, and consequently, Schugart wanted Lucido to stay with the company. The Membership Units were worth approximately $2,000,000.00. Schugart tried to convince Lucido to hold his Membership Units, but Lucido remained intent on selling them.

29. Negotiations ensued, and ultimately, Schugart and Lucido entered into a verbal agreement. Specifically, Lucido agreed to continue working at US Legal, and in consideration

therefor, Schugart agreed that Lucido would be permitted to sell ninety (90%) percent of his Membership Units to the private equity firm or its affiliates involved in the Transaction, subject to such party's approval, at the price ascribed to such Membership Units at the closing of the Transaction (approximately $1,800,000 for such 90%).  Schugart further agreed that in the event such party was not agreeable to purchasing the Membership Units, that Schugart would personally purchase all of Lucido's Membership Units at the price ascribed to such Membership Units at the closing of the transaction (approximately $2,000,000 for 100% of the Membership Units).  The verbal agreement as described in this paragraph is referred to hereafter as the "**Buyout Agreement**."

30. In reliance upon Schugart's promises and the Buyout Agreement, and specifically Schugart's promise to purchase Lucido's Membership Units if a sale of same to the private equity firm or its affiliates was not approved, Lucido remained at US Legal and performed his services with the expectation that per the Buyout Agreement, Lucido would be selling the aforesaid Membership Interests.

31. Over the course of the next several weeks, Lucido contacted Schugart on multiple occasions, asking if he received approval from the private equity firm or its affiliates to purchase the Membership Units.  Schugart strung Lucido along, telling him he was working on selling Lucido's equity and confirming he meant to honor the Buyout Agreement.

32. A few months later, Schugart breached the Buyout Agreement, telling Lucido, "I can't do that, it's gonna make me look bad." By that time, Lucido had missed professional opportunities and committed himself and his family in ways that made leaving US Legal more difficult, and he remained with the company.

33. Lucido conferred a benefit on US Legal, by remaining at US Legal and continuing to perform as a top salesperson for US Legal.

34. Due to Schugart breaching the Buyout Agreement, Lucido has been unable to sell his Membership Units, which, upon information and belief, has lost value over time. Thus, Lucido has lost the time value of money, and continues to suffer damages in an amount to be determined at trial.

### FIRST CAUSE OF ACTION
### AGAINST US LEGAL
### FOR BREACH OF CONTRACT

35. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

36. Pursuant to the Commission Agreement, US Legal agreed to pay Lucido commissions in the amount of 10% of all commissionable revenue generated by Lucido's sales efforts.

37. Beginning, upon information and belief, no later than 2016, and continuing Lucido's termination of employment with US Legal in April 2021t, US Legal, without any express or implied assent by Lucido, breached the Commission Agreement by failing to pay Lucido 10% of all commission revenue generated by his sales efforts, as set forth hereinabove.

38. Lucido performed all obligations on his part to be performed pursuant to the Commission Agreement, and pursuant to his relationship of employment with US Legal.

39. Lucido has demanded that US Legal pay him all amounts due and owing under the Commission Agreement but US Legal has failed, neglected and refused to do so.

40. By virtue of US Legal's breach of the Commission Agreement, Lucido has been damaged in an amount not precisely known at this time, but, upon information and belief, is estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period.

## SECOND CAUSE OF ACTION
## AGAINST US LEGAL
## PURSUANT TO NYLL §191
## (Willful and Knowing Failure to Pay Agreed-Upon Wages)

41. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

42. At all relevant times, Lucido was an "employee" and a "commission salesman" within the meaning of these terms under NY LaborLaw secs. 190, et seq., and under New York common law.

43. At all relevant times, Lucido was a non-exempt employee as defined by NYLL §190.

44. At all relevant times, US Legal was an "employer" within the meaning of these terms under NY LaborLaw secs. 190, et seq., and under New York common law.

45. At all relevant times, with respect to its Account Executives and for Directors of Business Development, US Legal's compensation practice was to pay a base salary plus commissions and bonuses (all of which constitute "wages" for purposes of New York Labor Law §§ 190, *et seq*.) based on the amount of revenue generated by the employee.

46. Pursuant to New York Labor Law § 191(c), "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment…."

47. Beginning, upon information and belief, no later than 2016, and continuing until termination of Lucido's employment with US Legal in April 2021, US Legal has willfully and knowingly refused to pay Lucido his earned wages (mostly in the form of unpaid commission amounts which he earned) pursuant to the terms of the parties' express contract, any implied contract

and/or implied-in-fact contracts created by the parties' normal course of dealings.

48. By virtue of the foregoing, US Legal has violated NY Labor Law Sec. 191(c) and is entitled to damages in an amount not precisely known at this time, but, upon information and belief, is estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period.

**THIRD CAUSE OF ACTION
AGAINST US LEGAL
PURSUANT TO NYLL §193
(Unlawful Deductions From Wages)**

49. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

50. NYLL §193 provides that "[n]o employer shall make any deductions from the wages of an employee" except for authorized deductions.

51. Beginning, upon information and belief, no later than 2016, and continuing until termination of Lucido's employment with US Legal in April 2021, US Legal willfully and knowingly deducted, withheld, diverted, and "shaved" certain amounts from Lucido's earned commissions and wages.

52. At no time did Lucido expressly or implicitly authorize any such deductions from his commissions or wages.

53. Not only were the unauthorized deductions made unlawfully, but US Legal failed to notify Lucido of the unlawful deductions.

54. US Legal acted willfully and deliberately in unlawfully deducting from Lucido's wages.

55. Pursuant to NYLL §193(5), "[t]here is no exception to liability under this

section for the unauthorized failure to pay wages, benefits or wage supplements."

56. By virtue of the foregoing, US Legal is liable for damages in an amount not precisely known at this time, but, upon information and belief, is estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period.

## FOURTH CAUSE OF ACTION
## AGAINST US LEGAL
## PURSUANT TO NYLL §§ 191(c) and 195
## (Failure to Provide Sales Commission Statements)

57. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

58. Beginning, upon information and belief, no later than 2016, and continuing until termination of Lucido's employment with US Legal in April 2021, US Legal has willfully and knowingly refused to provide Lucido some or all of his commission statements, including but not limited to, accurate commission statements, in violation of NY Labor Law Sections 191(c) and 195.

59. US Legal willfully and knowingly presented Lucido, as well as to other members of US Legal's sales team, false, deceptive, misleading and/or inaccurate commission statements, and/or inaccurate or misleading data and/or reports upon which such commission statements were allegedly based, so as to willfully, intentionally and knowingly deprive Lucido of the full amount of wages to which he was entitled and had earned in violation of NY Labor Law Sec. 191 and 105.

60. Accordingly, Lucido has been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION
AGAINST US LEGAL
PURSUANT TO NYLL §198
(Liquidated Damages, Attorneys' Fees and Prejudgment Interest)**

61. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

62. Pursuant to NYLL §198, an employee who prevails in the courts upon a wage claim is entitled "to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest [at 9% per annum] and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due….". See NYLL §198.

63. US Legal has no good faith basis to believe its underpayment of wages was in compliance with the law.

64. Accordingly, Lucido is entitled to recover attorneys' fees, prejudgment interest, and liquidated damages equal to 100% of the wage underpayment.

**SIXTH CAUSE OF ACTION
AGAINST US LEGAL
PURSUANT TO NYLL §§ 215
(Unlawful Retaliation)**

65. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

66. Upon information and belief, US Legal retaliated against Lucido for opposing US Legal's unlawful wage violations, and/or for requesting payment of unpaid wages and commissions to which he was rightfully entitled and had earned under NY Labor Law Secs. 190, et

seq.

67. At all relevant times, Lucido opposed US Legal's failure to pay all wages that were duly owed to him by demanding from members of US Legal's management and finance teams that US Legal pay him all unpaid, withheld, diverted, and shaved commissions, as well as repeatedly requesting accurate commission statements and any data upon which such commission statements were allegedly based due to US Legal's failure to timely provide such information as required under NY Labor Law sec. 191.

68. As set forth above, in retaliation for opposing US Legal's unlawful commission practices, US Legal took material adverse employment actions against Lucido, including removing his access to important computer systems and databases which he needed to perform his job and confirm his wage calculation. Furthermore, beginning in or around January of 2021, US Legal stopped paying Lucido certain other earned commissions, thereby cutting his pay. US Legal continued to retaliate against Lucido by withholding and diverting more of his commissions.

69. Pursuant to NYLL §215, Lucido is entitled to an amount to be determined at trial representing lost compensation and damages, costs and reasonable attorneys' fees, and liquidated damages not to exceed $20,000.

### SEVENTH CAUSE OF ACTION
### AGAINST US LEGAL
### FOR COMMON LAW FRAUD

70. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

71. Beginning, upon information and belief, no later than 2016, and continuing until termination of Lucido's employment with US Legal in April 2021, US Legal, upon information

and belief, has willfully and knowingly altered, created and presented to Lucido false, deceptive, misleading and/or inaccurate commission statements, and/or inaccurate or misleading data and/or reports upon which such commission statements were allegedly based.

72. US Legal willfully and knowingly presented same so as to willfully, intentionally and knowingly deprive Lucido of the full amount of wages and commissions to which he was entitled and had earned.

73. US Legal's willful and knowing presentation of deceptive, misleading and/or inaccurate commission statements, and/or inaccurate or misleading data and/or reports upon which such commission statements were allegedly based, constitutes and is actionable against US Legal as civil fraud under NY common law.

74. Lucido, to his detriment, reasonably relied upon the commission statements, data and reports provided to him by US Legal.

75. Upon information and belief, the shaving of commissions may have commenced long before Lucido discovered same and Lucido reserves the right to seek recompense for same should additional wrongdoings come to light during the discovery process.

76. Accordingly, Lucido has been damaged in an amount to be determined at trial but believed to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

**EIGHTH CAUSE OF ACTION
AGAINST US LEGAL
FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

77. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

78. In every contract, there is an implied covenant of good faith and fair dealing by each party not to do anything that will deprive the other party of the benefits of the contract, and a breach of this covenant by a failure to deal fairly or in good faith gives rise to an action for damages.

79. The terms of the Commission Agreement impose an obligation of good faith and fair dealing upon US Legal.

80. US Legal breached these duties by shaving commissions as aforesaid, and by willfully and knowingly altering, creating and presenting to Lucido false, deceptive, misleading and/or inaccurate commission statements, and/or inaccurate or misleading data and/or reports upon which such commission statements were allegedly based.

81. By virtue of US Legal's breach of the covenant of good faith and fair dealing, Lucido has been damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### AGAINST SCHUGART
### FOR BREACH OF CONTRACT

82. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

83. Pursuant to the Buyout Agreement, Schugart agreed to purchase Lucido's Membership Units at the price ascribed to same in the Transaction in the event the private equity firm or its affiliates refused to do so.

84. The private equity firm or its affiliates refused to purchase Lucido's Membership Units, thereby triggering Schugart's obligation to purchase Lucido's Membership Units pursuant to the Buyout Agreement.

85. Lucido continued to remain employed with US Legal, as required of Lucido pursuant to the Buyout Agreement, thereby performing all obligations on Lucido's part to performed

pursuant to the Buyout Agreement.

86. Notwithstanding due demand therefor, Schugart failed, neglected and refused to purchase the Membership Units as required by the Buyout Agreement.

87. By virtue of the aforesaid breach of contract by Schugart, Lucido has been damaged in the amount of approximately $2,000,000.

## TENTH CAUSE OF ACTION
## AGAINST SCHUGART
## FOR SPECIFIC PERFORMANCE

88. Lucido repeats and realleges each and every allegation above as though set forth at length herein.

89. Lucido and Schugart entered into the Buyout Agreement, which required Schugart to purchase Lucido's Membership Units at the price ascribed to them in the Transaction.

90. Lucido remains ready, willing and able to sell his Membership Units to Schugart as contemplated under the Buyout Agreement.

91. Lucido has fulfilled his duties pursuant to the Buyout Agreement.

92. It is within Schugart's power to perform the Buyout Agreement.

93. No prior request for specific performance has been sought by Lucido heretofore.

94. There is no adequate remedy at law.

95. Accordingly, Lucido is entitled to an order directing Schugart to purchase the Membership Units from Lucido at the agreed upon price.

## JURY DEMAND

96. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial

by jury.

**WHEREFORE**, Plaintiff Paul Lucido demands judgment as follows:

a) On the first cause of action against US Legal for breach of contract, an amount not precisely known at this time, but estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

b) On the second cause of action against US Legal for violation of NYLL §191 (unpaid wages), an amount not precisely known at this time, but estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

c) On the third cause of action against US Legal for violation of NYLL §193 (unlawful deductions), an amount not precisely known at this time, but estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

d) On the fourth cause of action against US Legal for violation of NYLL §§191 and 195 (failure to provide commission statements), an amount to be determined at trial;

e) On the fifth cause of action against US Legal based upon NYLL §198, reasonable attorneys' fees, prejudgment interest, and liquidated damages equal to 100% of the wage underpayment.

f) On the sixth cause of action against US Legal based upon NYLL §215 (unlawful retaliation), and amount to be determined at trial representing lost compensation and damages, costs and reasonable attorneys' fees, and liquidated damages not to exceed $20,000.

g) On the seventh cause of action against US Legal for common law fraud, an amount not precisely known at this time, but estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

h) On the eighth cause of action against US Legal for breach of the duty of good faith and fair dealing, an amount not precisely known at this time, but estimated to be in excess of $150,000 per year of his employment with US Legal, or in excess of $750,000 during the applicable limitations period;

i) On the ninth cause of action against Schugart for breach of the Buyout Agreement, damages in the amount of $2,000,000;

j) On the tenth cause of action against Schugart for specific performance, an order directing Schugart to purchase the Membership Units from Lucido at the agreed upon price;

k) Together with interest, attorneys' fees, punitive damages, and costs and disbursements of this action.

Dated: Garden City, New York
       November 7, 2023

                                              **ROSENBERG FORTUNA**
                                              **& LAITMAN, LLP**

                          By: *Brett D. Zinner*
                                              **BRETT D. ZINNER**
                                              Attorneys for **Plaintiff Lucido**
                                              666 Old Country Road, Suite 810
                                              Garden City, New York 11530
                                              (516) 228-6666

# VERIFICATION

STATE OF FLORIDA )
) ss:
COUNTY OF PALM BEACH )

**PAUL LUCIDO**, being duly sworn says: I am the Plaintiff herein; I have read the annexed Amended Verified Complaint; the contents of same are true to my knowledge, except as to those matters which are alleged upon information and belief, and as to those such matters, I believe them to be true.

_/s/ Paul Lucido_
PAUL LUCIDO

Sworn to before me on
this 7th day of November, 2023

_/s/ Fatmeh H._
NOTARY PUBLIC

FATMEH HAZIN
Notary Public - State of Florida
Commission # HH 322372
My Comm. Expires Oct 16, 2026